NICOLAS V. VIETH
WSBA #34196/ISB #8166
Vieth Law Offices, Cthd.
912 East Sherman Ave.
Coeur d'Alene, ID 83814
Telephone: 208-664-9494
Facsimile: 208-664-9448
Email: nick@viethlaw.com

JUSTIN P. LONERGAN
WSBA #55216/ISB #11161
Bohrnsen Stocker Smith, PLLC
312 W. Sprague Ave.
Spokane, WA 99201
Telephone: 509-327-2500
Facsimile: 509-327-3504
Email: jlonergan@bsslslawfirm.com

Attorneys for Defendant – Kyle Steven Scott Cate

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) CASE NO. 2:20-CR-108-RMP |
| | )  2:21-CR-51-RMP |
| vs. | ) |
| | ) DEFENDANT'S SENTENCING |
| KYLE STEVEN SCOTT CATE, | ) MEMORANDUM |
| Defendant. | ) |

## INTRODUCTION

The charges to which Mr. Cate pled guilty have served as a major inflection point for this 30-year-old defendant. The parties' Rule 11(C)(1)(c) plea agreement appropriately balances the interests of justice while not being greater than necessary. In this memorandum, Mr. Cate offers a brief application of the 18 U.S.C. §3553 factors and discusses the only area of factual dispute with the PSIR. However, regardless of how the Court resolves the remaining factual

**DEFENDANT'S SENTENCING MEMORANDUM - 1**

matters, the plea agreement is fair, appropriate, and should be approved.

## I. The Nature and Circumstances of the Offenses and the History and Characteristics of the Defendant.

Mr. Cate pled to serious offenses, particularly the carjacking from M.P. Mr. Cate understands that his actions had significant repercussions for M.P., and his decision to accept the plea agreement recognizes and respects those impacts.

On the other side of the coin, though, Mr. Cate's history and characteristics deserve significant consideration. From an early age, Mr. Cate witnessed and personally suffered from domestic violence (arguably on the more severe end of the continuum of domestic violence). See 2:20-cr-00108-RMP, ECF No. 57, PSIR, ¶163 to ¶168. The record, confirmed by Mr. Cate's mother, reflects that the repeated violence at his father's hand correlated to Mr. Cate spiraling into substance abuse. See id. at ¶178. It is an unfortunate reality of this case that the violence and dysfunction in Mr. Cate's youth seriously and adversely impacted Mr. Cate's adjustment, coping skills, and decision-making ability. See id. Substance abuse became a prevalent part of Mr. Cate's life as a young teenager and, once his criminal record was established, Mr. Cate pinballed between periods of custody and freedom. See id. at ¶136 to 159. When not in custody, Mr. Cate often kept poor company. See id. In light of the well-known shortfalls in education and employment opportunity which are so endemic to many tribal

communities, it is not hard to see how Mr. Cate found himself on the path to this case. See e.g. Exhibit A, Colville Tribal Court Affidavit, page 2 (noting that Mr. Cate was under the influence of drugs at the time of the carjacking offense).

## II. The Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses.

The 112-month period of confinement and 3 years of supervisory release undoubtedly support these considerations. Mr. Cate will spend years in prison for the offenses of conviction and will face the risk of additional future confinement if he reoffends while on supervision. The sentence reflects that abuse of drugs is not an excuse, although it is an extenuating circumstance in appropriately measuring the seriousness of the case. No one will look at this sentence and say that Mr. Cate "got off easy."

It is also important to note that Mr. Cate has shown a willingness to take responsibility for his actions – even before his plea agreement. With respect to Count 1 of the 2021 case (unlawful possession of firearms by a felon), Mr. Cate admitted to possessing the firearms as soon as the Okanagan County deputies asked him about it. See Exhibit B, Investigative Report for Incident S18-04699, pages 7-8. Mr. Cate could have remained silent when questioned, but he instead chose to not lie to the officers. Id.

## III. The need for the sentence imposed to afford adequate deterrence to criminal conduct.

The sentence serves as a strong deterrent. Much of the length of Mr. Cate's guidelines range owes to his criminal history category. Of note, this sentence will be more than *six times longer* than the greatest of Mr. Cate's previous offenses (i.e., an 18-month sentence for a controlled substances conviction in 2016). See PSIR, ¶95. It is clear to Mr. Cate that his record exposed him to greater potential punishment than someone who might be facing a first offense. Mr. Cate similarly recognizes that future legal problems may to result in increasingly severe consequences. As such, the sentence provides a strong deterrent effect.

## IV. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant.

This factor is relevant given Mr. Cate pled to carjacking from M.P., but it is probably not a predominant consideration, given Mr. Cate's age, acknowledgment of his drug problems, and acceptance of responsibility. The fact Mr. Cate will have a significant portion of his life to live after completing his sentence also causes this factor to be weighed less than other factors. Regardless, Mr. Cate's sentence will protect the public as he works toward improving himself over the years of his extended period of confinement.

## V. The need for the sentence imposed to provide the defendant with

**needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

This statutory factor weighs strongly in favor of approving the parties' proposed sentence.

Mr. Cate appreciates the significant time and effort that Probation took during the presentence investigation to thoroughly portray how multiple risk factors combined to influence his behavior. See PSIR, ¶161 to ¶171. The presentence investigation, report, and the upcoming sentencing hearing culminate a long period of largely solitary reflection for Mr. Cate, starting with his arrest by tribal authorities in April of 2020 (he has remained in continuous custody since that date). See PSIR, pg 2 and ¶159. During that period, Mr. Cate has undergone a drug abuse evaluation and sought out care for mental health concerns. See id. at ¶175. The proposed sentence is long enough to give him an opportunity to seek appropriate BoP treatment and vocational services, but not so long that it risks jeopardizing his ability to reintegrate into society at the end of his sentence.

*Mr. Cate asks that the Court consider recommending that he be allowed to participate in RDAP at his earliest eligibility.*

### VI. The Kinds of Sentences Available.

This factor does not weigh significantly in this case. See PSIR, ¶221 (reflecting ineligibility for probation on the 2020 case).

**DEFENDANT'S SENTENCING MEMORANDUM - 5**

## VII. The Sentencing Range Established by the Guidelines, and Pertinent Policy Statements.

Mr. Cate generally agrees with Probation's careful calculation of the guidelines range. The only area of dispute concerns whether the court should find that Mr. Cate burglarized Dave Gun & Pawn in Riverside, Washington, on September 13, 2018.

Probation included this additional offense in its guidelines calculations. See ECF No. 57, ¶46, ¶48. The United States charged Mr. Cate with offenses related to the pawn shop burglary (Counts 2 and 3 of the 2021 indictment) but agreed to dismiss those charges as part of the plea agreement. See id. at ¶6.

The evidence does not support now including the pawn shop burglary as offense conduct, as it does not meet the preponderance standard. The investigative file is built on multiple hearsay statements that lack indicia of reliability. See United States v. Berry, 258 F.3d 971, 976 (9th Cir. 2001) ("[w]e have qualified the admissibility of hearsay at sentencing by requiring that such statements be accompanied by 'some minimal indicia of reliability'"). For example, local investigators spoke with Mr. James Gee and Mr. Martin Stanley, two men who supposedly spoke with Sage Wiggins, one of the alleged participants in the burglary. See Exhibit C, ATF Warrant Declaration, Bates Nos. 14-15. Mr. Stanley told investigators that Wiggins told him that Mr. Cate was with him during

the pawn shop burglary.  Id.  Mr. Gee, however, said that Mr. Stanley told him (Gee) that Wiggins told him (Stanley) that Wiggins was with "some people" when he burglarized the shop.  Id.  The evidence is therefore ambiguous in this critical timeline of the initial reporting.

Authorities appear to have hinged much of their case on the fact they found a flashlight inscribed with the name "Cate" in the vicinity of the pawn shop.  See Exhibit D, Investigative Report for Incident S19-05645, Bates No. 9.08.  For reasons that can be explored at the sentencing hearing, this is an unsupported link to Kyle Cate.

Police collected fingerprint evidence from the Ford Taurus.  The crime lab *excluded* Mr. Cate as a potential contributor.  See Exhibit E, Crime Laboratory Report.  No other biological, chemical, or other forensic evidence was collected to link Mr. Cate to the pawn shop burglary.  See Exhibit D, generally.  Mr. Cate expects the evidence will demonstrate that authorities recovered only one of the weapons from the pawn shop.  See Exhibit F, ATF Interview of Conway.  No evidence has been proffered linking Mr. Cate to the person from whom the weapon was recovered.  See id.  In fact, Mr. Antwan Conway, who sold the weapon to a third party in Spokane, confirmed to FBI agents that he did not recognize Mr. Cate when agents showed him a photo.  See id.

In sum, these investigative deficiencies do not support including the

burglary in the guidelines calculation.

However, as the Government noted in recent filings, the Court's findings on this factual issue are important but the impact is minimal. See ECF No. 55, Response to Defendant's Objections to the PSIR. More importantly, the parties' proposed sentence is fully in line with the broader 18 U.S.C. §3553 construct.

## VIII. The Need for Unwarranted Sentencing Disparities.

A key purpose of the Guidelines is to promote general uniformity in sentencing. See United States v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007). Mr. Cate's sentence is either within or is very close to the guidelines range, depending on how the Court makes its findings of fact. There is no evidence that the 112-month sentence is disparate from the sentences of other, similarly situated defendants.

## IX. The Need to Provide Restitution to Any Victims.

As part of his plea agreement, Mr. Cate agreed to provide restitution, if requested. See PSIR, ¶6. The defense is not aware that M.P. has requested restitution but Mr. Cate would of course abide by his agreement to the fullest of his ability, recognizing that his economic situation was and is exceedingly poor.

## CONCLUSION

Mr. Cate is, in many ways, relieved for his upcoming sentencing hearing. He wants to make amends, improve himself, and be ready for a new chance at

something better at the end of his sentence.  The 112-month plea agreement appropriately balances the statutory factors.  As such, the Court should approve the parties' agreed-upon sentence.

RESPECTFULLY SUBMITTED this 24th day of November, 2021.

Respectfully Submitted,

VIETH LAW OFFICES, CHTD.

  /s/ Nicolas V. Vieth  
NICOLAS V. VIETH
Attorney for Defendant – K. Cate

BOHRNSEN STOCKER SMITH PLLC

  /s/ Justin P. Lonergan  
JUSTIN P. LONERGAN
Attorney for Defendant – K. Cate

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 24th day of November 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

Vanessa Waldref, United States Attorney
Richard Barker, Assistant United States Attorney

                                             */s/ Justin P. Lonergan*
                                             JUSTIN P. LONERGAN