Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No. 2:20-CR-108-RMP |
|---|---|
| Plaintiff, | 2:21-CR-051-RMP |
| v. | United States Sentencing Memorandum |
| KYLE STEVEN SCOTT CATE, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Richard R. Barker, Assistant United States Attorney, respectfully submits this sentencing memorandum. As set forth herein, the United States seeks a sentence of 112 months' incarceration, followed by 3 years' supervised release. This recommendation is based on the below memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

I.   **BACKGROUND AND GUIDELINES CALCULATIONS**

The relevant facts are set forth in the PSIR and the parties' Plea Agreement. In short, Defendant carjacked M.P. at gunpoint, threatening to kill M.P in April 2020. ECF No. 57 at ¶11. Defendant then drove away in M.P.'s stolen car, leading police on a 23-mile-high speed chase – traveling at times at speeds greater than 100 miles per hour. *Id.* at ¶12. The gun, which bore Defendant's fingerprint, was found in Defendant's

United States' Sentencing Memorandum 1

flight path. *Id.* at ¶ 14. Significantly, Defendant left a lasting impact on M.P., pointing the gun at M.P. and threatening his life. *Id.* at 16. All of this happened, while M.P.'s son was sleeping in an adjacent room. *Id.*

Stepping back, Defendant not only unlawfully possessed the gun used in the carjacking, he also was in possession of additional firearms that were taken during two burglaries in Okanagan County in the summer of 2018, which was after Defendant sustained a felony conviction. ECF No. 57 at ¶¶ 19-35. The evidence of his possession is compelling, including Defendant's own admissions as well as witness statements regarding Defendant's involvement in the theft of certain of these firearms from a local pawn shop. *See id.*

Following the Plea Agreement, the United States Probation Office conducted its own investigation and submitted a Presentence Investigation Report ("PSIR") to the Court. *See* ECF No 57. For purposes of calculating the appropriate range under the United States Sentencing Guidelines (the "Guidelines"), the United States agrees with the Officer Lerch's calculations, as set forth in the draft PSIR. Specifically, the United States agrees the total offense level is 28 with a criminal history category V, resulting in an advisory sentencing range of 130-162 months. *Id.* at ¶221.

## II.  VICTIM IMPACT & RESTITUTION

United States Probation Officer Cassie Lerch's excellent Presentence Investigation Report captures the impact of this terrible offense on M.P. As the PSIR details:

> M.P. recalled what he described as the most frightening night of his life. He described how, in the middle of the night, he answered the door to find the defendant, a stranger, who was paranoid and appeared to be on drugs, demanding M.P. give him a "ride." After M.P. declined to do so, out of fear the defendant would harm him, the defendant pulled out a firearm and pointed it at M.P.'s face, just inches from his head, threatening to kill M.P., and then entered the home searching for keys. When the defendant started heading in the direction of M.P.'s son's bedroom, M.P. feared for his son's life and "gave up," and allowed the defendant to take his car keys and car.

United States' Sentencing Memorandum 2

ECF No. 57 at 37. M.P. detailed further "he has struggled with being able to even leave his home, and fears going to the simplest places, such as a grocery store, or anywhere in public." *Id.* at ¶38. He has been laid off from his work and has not been employed since May 2021.

M.P.'s vehicle, the one stolen from him during the carjacking, ultimately was a total loss – i.e., after being driven for several miles at speeds over 100 miles per hour, the engine gave out. At sentencing, the United States anticipates seeking restitution on behalf of M.P. for the value of the 1998 Subaru Legacy.[1]

### III.    UNITED STATES' SENTENCING RECOMMENDATION

In light of the Plea Agreement, Guidelines, and factors set forth at 18 U.S.C. § 3553, the United States respectfully recommends a sentence of 112 months' incarceration consistent with the parties' 11(c)(1)(C) Plea Agreement. The United States further believes a three-year period of supervised release with the conditions recommended by U.S. Probation is appropriate. It is the United States' view that such a sentence is appropriate, but no greater than necessary, to achieve the statutory goals of sentencing. The government further requests that the Court order a $200 mandatory special penalty assessment.

1. <u>The nature and circumstances of the offense</u>

The circumstances of the offenses involve Defendant's carjacking at gunpoint, threats on M.P.'s life, and repeated possession of firearms, even though Defendant is a convicted felon. The carjacking of M.P. with a sleeping child in the adjacent room was a horrifying experience. Defendant came to M.P.'s home, unannounced and acting strangely. He then demanded M.P.'s car and keys. Defendant took the car and led police on a lengthy car chase. Based on his erratic behavior, Defendant is fortunate that M.P. or someone else driving on the same highway as Defendant was not physically

---

[1] The United States anticipates providing additional materials pertaining to the valuation of the Subaru Legacy prior to sentencing.

United States' Sentencing Memorandum 3

injured. Yet, while M.P. may not have suffered a physical injury, this incident will impact M.P. for the rest of his life.

   2. <u>History and characteristics of Defendant and Need to Protect the Public</u>

  Defendant's criminal history is concerning. He has convictions going back to 2008, and he has been incarcerated on a number of occasions. *See* ECF No. 57, ¶71. He also has reoffended while on supervision. *Id.* at ¶73. While some of these convictions are more innocuous – e.g., traffic violations – others are serious and demonstrate a pattern of escalating dangerousness – e.g., trafficking in stolen property, obstructing police, robbery, narcotics offenses, etc. *Id.* ¶¶ 74 – 102. To put these convictions in context, Defendant's criminal record stems, at least in part, from mental health issues and substance abuse. *Id.* at ¶¶ 175-80. Defendant has been using methamphetamine and heroin since he was fifteen years old. *Id.* Though he has had opportunities to attend drug treatment programs, he has not completed them. *Id.* at ¶ 180.

  Based on the length of his criminal record, it is clear that brief stints of incarceration have had little impact on Defendant's behavior or his pattern of turning to illegal drugs. This history demonstrates that Defendant poses a danger to the community and a significant period of incarceration is warranted. Additionally, Defendant was on supervised release when he committed the offenses to which he has now pled guilty. *Id.* at ¶ 104. Accordingly, he is a risk to the community, even when properly supervised.

   3. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

  The best way to ensure consistent sentences for similarly-situated Defendants across courtrooms, districts, and the country is for courts to apply the sentencing Guidelines in the same manner everywhere. *See United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). The Guidelines are the only normative way to accomplish that. In this case, a sentence close to the Guideline range properrly accounts for "the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Numerous courts have recognized that sentencing within the Guidelines range serves as a bulwark against unwarranted sentencing disparity. *See United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (recognizing that guidelines "help to maintain uniformity in sentencing throughout the country"); *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants") (quoting 18 U.S.C. § 3553(a)(6)); *United States v. Smith*, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).

The Ninth Circuit has specifically observed that a sentence consistent with the guideline range is unlikely to be disparate because such a sentence "represents the sentence that most similarly situated defendants are likely to receive." *United States v. Becerril-Lopez*, 541 F.3d 881, 895 (9th Cir. 2008). Thus, mindful that the Guidelines must be "the starting point and the initial benchmark," *United States v. Carty,* 520 F.3d 984, 991–92 (9th Cir. 2008), the United States submits that a sentence of 112 months, which is just slightly below the guidelines, will avoid an unwarranted sentencing disparity and is appropriate in this case. A sentence of anything less, especially on these facts, would be disproportionately low considering Defendant's history and the harm inflicted on his victim in this case. That said, a sentence of 112 months also takes into account Defendant's upbringing and the role of illegal drugs in this case.

### GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends the Court impose a sentence of 112 months' imprisonment and a three-year term of supervised release as reflected in the parties' 11(c)(1)(C) plea agreement. Although this is lengthy sentence, it actually is below the guidelines range, as determined by U.S. Probation. Such a sentence is appropriate and takes into consideration the relevant factors under 3553(a).

United States' Sentencing Memorandum 5

1   Respectfully submitted this 24 day of November, 2021.

Vanessa R. Waldref
United States Attorney

*s/ Richard R. Barker*
Richard R. Barker
Assistant United States Attorney

United States' Sentencing Memorandum 6

**CERTIFICATION**

I hereby certify that on November 24, 2021, I electronically filed the foregoing with the Clerk of the Court and counsel of record using the CM/ECF System.

*s/Richard R. Barker*
Richard R. Barker
Assistant United States Attorney
